## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTWON ARRINGTON,       )
      Petitioner,        )     **Civil Action No. 09-136 Erie**
                   )
     **v.**               )
                   )     **Magistrate Judge Susan Paradise Baxter**
**MICHAEL C. BARONE, <u>et al.</u>,**   )
      Respondents.     )

### <u>OPINION AND ORDER</u>[1]

Presently before the Court is a petition for a writ of habeas corpus filed by Antwon Arrington. (ECF No. 7). He is challenging a judgment of sentence imposed by the Court of Common Pleas of Erie County on or around August 3, 2005. He raises four grounds for relief, which he has set forth in his Memorandum of Law In Support of Writ of Habeas Corpus. (ECF No. 8). He claims that his former attorney, Assistant Public Defender Bruce Sandmeyer, Esquire, provided him with ineffective assistance in violation of his Sixth and Fourteenth Amendment rights for:

I.    "failing to object to the introduction of the video-taped statement [of Natasha Rosendary, who testified as a hostile witness for the Commonwealth at his trial and who was identified as CI #1 in the affidavit of probable cause that was attached to a request for a search warrant], where no meaningful opportunity exist[ed] to cross-examine [Rosendary], depriving [him] of his Sixth Amendment right to confront;"

II.    "failing to challenge the issuance of the search warrant, considering the lack of reliability of the informant [Rosendary, CI #1], in addition to the failure to cause the Commonwealth to identify [and] produce or otherwise confirm the existence of CI #96-04";

III.    failing to call alibi witness Rashad McLaurin at both the suppression hearing and the trial;

IV.    "failing to raise and brief [on direct appeal] the issues as stated above."

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

(ECF No. 8 at 4).  For the reasons set forth below, Arrington's petition is denied and a certificate of appealability is denied.

I.

**A.**     **Relevant Background**[2]

On November 3, 2004, at approximately 1:00 p.m., Officer Michael Nolan of the Erie City Police arrested Natasha Rosendary and her boyfriend, Reese Beason, while they were re-packaging seven ounces of crack cocaine from an "eight-ball" into smaller plastic bags.  Rosendary told the police that she had purchased the eight-ball from Arrington approximately one-half hour earlier at 2014 Myrtle Street in Erie.  Arrington was under surveillance for suspicion of drug activity at that time and Rosendary agreed to cooperate with the police in their investigation of him.  Towards that end, she called Arrington that same day and told him that she wanted to be resupplied with more cocaine.  She asked him to meet her on a nearby street corner.  (CP Dkt. No. 24, <u>Commonwealth v. Arrington</u>, No. 27 & 28 of 2005, slip op. at 1-2 (CP Erie, Nov. 7, 2005); Pre-Trial Motion Hr'g Tr. at 2-7).

The trial court, in its 1925(b) Opinion, explained what happened next:

> Detective Donald Dacus and Officer Michael Nolan fully searched Ms. Rosendary according to the routine practices of the Erie Police Department for preparing a confidential informant for a controlled buy.  The officers were satisfied that she did not have any contraband on her before they permitted her to meet with Mr. Arrington.  Ms. Rosendary went to 4th Street and Reed Avenue to meet Mr. Arrington while Detective Dacus, Officer Nolan and Lieutenant Fetterman waited in the unmarked van seventy-five (75) feet away.  Detective Dacus' cell phone number was programmed into Ms. Rosendary's cell phone, and she was instructed to hit the "send" button and exit Mr. Arrington's vehicle once she saw drugs.  Ms. Rosendary received $300.00 in controlled buy money from the officers and she was kept under surveillance prior to, and during, the buy.

[2]     Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which contains documents numbered 1 through 50.  The documents contained in that file will be cited to as "CP Dkt. No. __ ."

2

Meanwhile, the surveillance team at 2014 Myrtle Avenue observed Mr. Arrington and another male, Wayne D. Burnett, drive off at approximately 6:28 p.m. in a white Mercury Mountaineer with tinted glass windows, bearing Pennsylvania plate FTS-3241. A mobile survey squad followed Mr. Arrington and his passenger to the corner of 4th Street and Reed Avenue. Ms. Rosendary climbed into Mr. Arrington's Mountaineer and remained there for approximately sixty (60) seconds. Detective Dacus monitored Ms. Rosendary from his unmarked van while Officer Nolan and Lieutenant Fetterman moved into position between some houses close to the Mountaineer. Detective Dacus received the signal from Ms. Rosendary on his cell phone and she then exited the Mountaineer.

Officer Nolan and Lieutenant Fetterman approached Mr. Arrington's vehicle on foot as backup units were called in to assist. The two officers attempted to walk in front of the vehicle with their badges displaced and weapons drawn, and asked Mr. Arrington to shut his vehicle off and put his hands up. Mr. Arrington put his vehicle in reverse gear and crashed his Mountaineer into Sergeant Jim Nolan's patrol vehicle. Lieutenant Fetterman and Officer Michael Nolan physically removed Mr. Arrington from the vehicle, restrained him on the ground and placed him in handcuffs. Officer Michael Nolan observed that the buy money was sitting on the front's driver's seat, along with a weapon on the floor where Mr. Arrington's passenger, Wayne D. Burnett, was seated. Approximately one quarter-ounce of crack cocaine (seven (7) grams), packaged in a clear plastic bag, was retrieved from Ms. Rosendary, who said that she purchased it from Mr. Arrington while she was inside his Mountaineer.

(CP Dkt. No. 24, Arrington, No. 27 & 28 of 2005, slip op. at 3-4).

Soon after this occurred, Det. Dacus submitted an application for authorization to search Arrington's residence at 2014 Myrtle Street. (The search warrant and affidavit of probable cause is attached as Ex. 1 to the petition, ECF No. 7). In the affidavit of probable cause, Det. Dacus set forth the details of the controlled buy. Rosendary was identified in the affidavit as "CI #1." Det. Dacus also referenced information provided by another confidential informant identified as "CI #96-04." He stated:

On October 22, 2004 Det Dacus and Sgt Nolan did speak with CI #96-04. This CI did tell detectives that he/she learned information through conversation with associates of Antwon Arrington that Arrington was dealing large quantities of crack cocaine in the City of Erie and that he was residing at 2014 Myrtle Street. This CI is believed to be reliable as he/she has cooperated with law enforcement resulting in 12 arrest[s] and convictions for felony drugs within the City of Erie. This CI has also provided information on at least fifty other individuals within the City of Erie involved in the drug trade and this information has been corroborated by other reliable informants, surveillance and information contained within the Erie Police database.

(ECF No. 7, Ex. 1).

The district judge approved Det. Dacus' application for a search warrant and the police executed the warrant that day. The police entered Arrington's home (where he lived with his mother, Jennifer Hall). In his bedroom, they found 16 grams of crack cocaine and two pounds of marijuana, plus a firearm, money, and other paraphernalia. (CP Dkt. No. 24, <u>Arrington</u>, No. 27 & 28 of 2005, slip op. at 3-4).

The court appointed Attorney Sandmeyer to represent Arrington. On March 22, 2005, Sandmeyer filed a Notice of Alibi Defense in which it was stated that Arrington was in Cleveland, Ohio on November 3, 2004, during the time when Rosendary said she had been with him. (CP Dkt. No. 7). On that same day, Sandmeyer also filed the defense's Omnibus Pre-Trial Motion (CP Dkt. No. 8), in which it was argued that the evidence obtained in the search of Arrington's house should be suppressed because Rosendary was not a reliable source, and because she had not been sufficiently searched prior to the undercover purchase since a male officer had only performed a "rudimentary pat down" of her.

On April 26, 2005, the Honorable William R. Cunningham presided over an evidentiary hearing on Arrington's motion. At the conclusion of the hearing, Judge Cunningham made the following findings of fact:

> On November 3, 2004, Natasha Rosendary was arrested while in possession of illegal narcotics. Thereafter, she agreed to cooperate with the police and did so voluntarily and provided information to the police that she could secure cocaine from the defendant.
>
> In corroboration of that, she called the defendant and made arrangements. The defendant agreed to meet her in the area of 4th and Reed on November 3, 2004. In fact, that meeting occurred. The meeting was preceded by a pat down search by members of the Erie Vice Squad. And while they were not of the same gender, the pat down search was such that it satisfied the officers that she was not in possession of any controlled substance. And given the description of the search, I find that to be credible, that at the time she met with the defendant she was not in possession of any controlled substance.

4

She was in possession of some marked buy money. That, in fact, she entered … the defendant's … vehicle. That she purchased cocaine from him, provided him the buy money, and turned that cocaine over to the police, who then arrested the defendant. And on the front seat, apparently underneath where the defendant was seated, was the marked buy money in question.

All of those facts and circumstances corroborate the information provided by the C.I. which then resulted in a search, a subsequent search, of the defendant's residence which was based on the reliable information provided by the C.I.

I do not find credible the defendant's testimony that he was in Cleveland earlier that day or that she was in Cleveland with him that day. That's completely contrary to what's been testified to at least as to her whereabouts, "her" being Natasha Rosendary's whereabouts as testified to by the police.

So on the basis of those findings of fact I'm going to deny the motion to suppress.

(4/26/05 Pre-Trial Motion Hr'g at 31-32).

Arrington's jury trial was held on May 19-20, 2005, before the Honorable Michael E. Dunlavey. The first witness that the Commonwealth called was Rosendary. She immediately indicated that she did not want to testify and the court declared her a hostile witness. (5/19/05 Trial Tr. at 49-50). Rosendary acknowledged that Arrington agreed to bring her crack cocaine at the corner of 4th and Reed Street. (Id. at 50-51, 53-54). Although at points in her testimony she admitted that Arrington sold her crack cocaine (id. at 58-59, 67), at other points she suggested she actually had had drugs on her (which she had hidden in her "privates") when she had met him and that the police had not performed a sufficient search of her person prior to the controlled buy. (Id. at 54-56, 62). The prosecutor questioned Rosendary about the videotaped statement that she had given to the police in which she stated that Arrington sold her crack cocaine for $300 during the controlled buy. (Id. at 66). Rosendary said that she was "led into saying" that because she was scared. (Id.)

During a recess, the court met with counsel. There was agreement to obtain counsel for Rosendary before additional testimony was taken since "she's just implicated herself in a felony drug transaction and she needs to be informed of that." (Id. at 72-73). Counsel met with Rosendary and

advised her of her right to take the Fifth Amendment. (<u>Id.</u> at 76). The recess ended and the prosecutor continued the examination of Rosendary. She stated that she wanted to exercise her right against self-incrimination "with regard to the incident with Mr. Arrington at 4th and Reed, where [she] entered the vehicle[.]" (<u>Id.</u> at 78-79).

In order to impeach Rosendary's testimony that it was she, and not Arrington, who had produced the crack cocaine during the controlled buy, the prosecutor played for the jury a redacted version of the videotaped statement that she had given to the police after the buy. (<u>Id.</u> at 80). The defense did not object to the admission of the tape. (<u>Id.</u> at 82). After it was played, Rosendary testified that only some of what she had said to the police on that day had been the truth. (<u>Id.</u> at 81).

Next, Sandmeyer moved for a mistrial "because Mr. Arrington would be unable to exercise his 6th Amendment right in his cross-examination of this witness since she's taken the 5th, and basically everything surrounding the transaction in the vehicle[.]" (<u>Id.</u> at 83). The court denied the motion, stating:

> She's already testified that she had the drugs on her, they dropped out of her panties after she got out of the vehicle. She's given at least three versions of what occurred [that] day, and she has a right to invoke the 5th at any time.
>
> Unfortunately for your client, she gave the statement with counsel present. That was videotaped and she is subject to cross-examination, but she has refused to answer the questions of the District Attorney, so I'm denying the motion.

(<u>Id.</u> at 83).

Sandmeyer then questioned Rosendary. He asked her to explain what she had meant when she testified that she had been "forced" to be a confidential informant. She said that she was scared and therefore, whatever the police told her to do and say, she was "fine with[.]" (<u>Id.</u> at 84. <u>See</u> <u>also</u> <u>id.</u> at 88). Sandmeyer asked Rosendary whether what she had said on the videotape was true. She replied: "I was just basically ... saying what happened on that day, and just reliving the moment again, just saying

what he [Det. Nolan] said happened that day." (Id. at 88). When asked again whether she had told the truth on the videotape, she said: "I [did] what he wanted me to do." Rosendary then stated that she wanted to exercise her Fifth Amendment rights. (Id. at 89).

Arrington's trial resumed the next day, May 20, 2005. The prosecution called as witnesses the police detectives and officers involved in the case. The defense presented no witnesses.

The jury found Arrington guilty on the following charges related to the controlled buy: Unlawfully Delivering a Controlled Substance (7 grams of cocaine); Possessing a Controlled Substance; and Possession of Drug Paraphernalia. Based upon the evidence seized from his home, the jury rendered guilty verdicts on two counts of Possessing a Controlled Substance (16 grams of crack cocaine, two pounds of marijuana); two counts of Possession with Intent to Deliver Controlled Substances; and one count each of Possession of Drug Paraphernalia and of Possession of a Firearm. On August 3, 2005, the court sentenced Arrington to an aggregate sentence of 16-32 years' incarceration.

Arrington, through Sandmeyer, filed a direct appeal with the Superior Court of Pennsylvania. He raised several issues in that appeal. In relevant part, he argued that his rights under the Confrontation Clause had been violated because he was unable to cross-examine Rosendary. On November 7, 2005, Judge Dunlavey issued his Rule 1925(b) Opinion in which he concluded that this issue had no merit. (CP Dkt. No. 24, Arrington, No. 27 & 28 of 2005, slip op. at 14-18).

On September 15, 2006, the Superior Court issued a 14-page Memorandum in which it affirmed Arrington's judgment of sentence. (CP Dkt. No. 25, Commonwealth v. Arrington, 1603 WDA 2005, slip op. (Sept. 15, 2006)). In rejecting his Confrontation Clause claim, the Superior Court held:

> Appellant also argues that he should have been granted either a new trial or a judgment of acquittal after he was not able to fully cross-examine Ms. Rosendary since she "broke down" during the course of [her] impeachment, resulting in a violation of the Sixth Amendment right to confront witnesses. Appellant's brief at 17. At trial, Ms. Rosendary testified favourably to Appellant, telling the jury that Appellant did not give her the drugs

that she purchased during the controlled buy and that she had hidden them in her private area beforehand.  She was declared a hostile witness, was appointed counsel, and invoked her Fifth Amendment rights.  A videotaped statement made by Ms. Rosendary on November 5, 2004, regarding the events of the controlled buy was shown to the jury.  Appellant raised no objection to introduction of that statement.

Ms. Rosendary remained on the stand, and Appellant suggested to the court that he might not be able to cross-examine the witness since she had invoked the Fifth Amendment.  The trial court noted that Ms. Rosendary already had testified favourably to Appellant and told Appellant to proceed to cross-examine her, which Appellant did.  Ms. Rosendary stated that she was forced to cooperate with police, acknowledged that there was a dispute between her family and Appellant's family, testified that she made the videotaped statement on November 5, 2004, because she was afraid, and otherwise aided again in Appellant's defense.

As noted recently by our Supreme Court in <u>Commonwealth v. Wilson</u>, 580 Pa. 439, 456-57, 861 A.2d 919, 929 (2004):

> The Confrontation Clause of the Sixth Amendment "provides two types of protections for a criminal defendant:  the right physically to face those who testify against him, and the right to conduct cross-examination."  <u>Pennsylvania v. Richie</u>, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) (plurality opinion).  These protections are not violated, where, as here, a testifying witness's out-of-court statement is admitted and the witness is subject to full and effective cross-examination.  <u>See</u> <u>California v. Green</u>, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

In this case, Appellant failed to raise any objection to [the] introduction of Ms. Rosendary's prior statement, which was inconsistent with her trial testimony.  His confrontation clause rights, which he now invokes on appeal, were not violated as he was able to conduct effective and full cross-examination, exploring the facts of the controlled buy, the making of the videotaped statement, and the possibility that the statement resulted from animus against Appellant.  Indeed, Appellant now fails to delineate what areas he was prevented from exploring during his cross-examination.  As the record supports the trial court's conclusion that Appellant was afforded adequate cross-examination of a witness who aided in his defense, we decline to grant a new trial.

(<u>Id.</u> at 9-10).

In October 2007, Arrington, through new counsel, filed a motion for collateral relief in the Court of Common Pleas pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP Dkt. No. 26), which counsel later amended.  (CP Dkt. No. 32).  On May 16, 2008, the PCRA

Court issued a Memorandum Opinion in which it denied Arrington relief. (CP Dkt. No. 34, Commonwealth v. Arrington, Nos. 27 and 28 of 2005, slip op. (May 16, 2008)).

Arrington, through counsel, filed an appeal with the Superior Court in which he raised the claims the he raises in this proceeding as Claims I, II, and III. (See CP Dkt. No. 49, Commonwealth v. Arrington, 1226 WDA 2008, slip op. at 5-6 (July 6, 2009)). The Superior Court denied each of these claims on the merits. (Id. at 6-11).

In this habeas proceeding, Arrington challenges the result of the PCRA proceeding and claims that he is entitled to a new trial. Respondents have filed their Answer (ECF No. 13), and Arrington has filed a Reply (ECF No. 15).

**B.**     **Discussion**[3]

    **1.**     **Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Arrington's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

---

[3]     In their Answer, Respondents contend, *inter alia*, that the petition should be denied as untimely under the applicable statute of limitations, 28 U.S.C. § 2244(d). However, as Arrington points out in his Reply, in performing their calculation Respondents failed to recognize that his state post-conviction motion tolled the limitations period pursuant to § 2244(d)(2) during the time in which his state post-conviction motion was pending, *which includes the time in which he could have filed a petition for allowance of appeal with the Pennsylvania Supreme Court.* See Carey v. Saffold, 536 U.S. 214, 219-21 (2006); Swartz v. Meyers, 204 F.3d 417, 420-24 (3d Cir. 2000).

In describing the role of federal habeas proceedings, the U.S. Supreme Court, in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." <u>Lambert v. Blackwell</u>, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
> > (1) resulted in a decision that was *contrary to,*[4] *or involved an unreasonable application of,*[5] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
> >
> > (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

---

[4] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" <u>Lambert</u>, 387 F.3d at 234, quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

[5] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" <u>Lambert</u>, 387 F.3d at 234, quoting <u>Williams</u>, 529 U.S. at 407.

(Emphasis added).

Thus, AEDPA circumscribes a federal court's review of a state prisoner's federal constitutional claim when the state court has adjudicated that claim on the merits. Importantly, review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011). See also Brown v. Wenerowicz, — F.3d —, No. 2011 WL 6091408, *7-9 (3d Cir. Dec. 8, 2011); Roundtree v. Balicki, 640 F.3d 530, 538 (3d Cir. 2011).

## 2. Analysis

Because the Superior Court rejected Claims I through III on the merits, this Court's analysis of them is governed by AEDPA's standard of review, as codified at 28 U.S.C. § 2254(d). The "clearly established Federal law" for AEDPA purposes in which to analyze them is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Arrington first must show that Sandmeyer's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). The Court of Appeals for the Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v.

Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires that Arrington demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." Id. at 694. As the Third Circuit Court recently explained:

> He "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). *The likelihood of a different result must be substantial, not just conceivable.* Id.

Brown, — F.3d at __ , No. 2011 WL 6091408, *10 (emphasis added).

The Superior Court applied the correct legal standard when it evaluated Claims I through III. (CP Dkt. No. 49, Arrington, 1226 WDA 2008, slip op. at 7-8). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication passes federal habeas review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406.

The only remaining question for this Court to decide is whether the Superior Court's adjudication of Claims I, II, or III was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The U.S. Supreme Court recently stressed the "highly deferential" review that this Court must accord the state court's decision:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). The Supreme Court also has recently elaborated:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

> **(a)  Sandmeyer's failure to object to the introduction of Rosendary's videotaped statement**

In Claim I, Arrington contends that Sandmeyer was ineffective for failing to object to the introduction of Rosendary's videotaped statement on the basis that its introduction violated his rights under the Confrontation Clause since she invoked her Fifth Amendment rights when the prosecutor asked her about the controlled buy.  This claim has no merit.  Although it is true that Sandmeyer did not object when the prosecution moved to admit Rosendary's videotaped statement, after it was played and Rosendary refused to answer even the simplest questions that the prosecutor asked her about what she had stated in the recording, Sandmeyer moved for a mistrial on the basis that her obstinate behavior would interfere with his ability to cross-examine her in violation of Arrington's rights under the Confrontation Clause.  (5/19/05 Trial Tr. at 82).  As set forth above, the trial court denied the motion (id. at 83) and, on direct review the Superior Court denied the Confrontation Clause claim on the merits. (CP Dkt. No. 25, Arrington, 1603 WDA 2005, slip op. at 9-10).  In the PCRA appeal, the Superior Court held that Arrington could not establish that Sandmeyer was ineffective for failing to challenge the admission of Rosendary's videotaped statement, as it had already determined that his rights under the Confrontation Clause had not been violated by what had occurred at the trial.  (CP Dkt. No. 49, Arrington, 1226 WDA 2008, slip op. at 9).  The Superior Court's decision was neither an unreasonable application of Strickland nor an unreasonable determination of the facts.

To the extent that Arrington is contending that the Superior Court erred on direct review in denying his Confrontation Clause claim, that claim is denied.  Its decision denying that claim on the merits also satisfies review under AEDPA.  As the Superior Court recognized, Rosendary – who was

hostile to the Commonwealth – *was cross-examined by defense counsel*. Thus, there was no violation of Arrington's rights under the Confrontation Clause. Rosendary testified during that cross-examination that the police had "forced" her to act as a confidential informant, that they had "scared" her and that is why she had agreed to do whatever they told her to do. (5/19/05 Trial Tr. at 84, 86-87). Before she stated that she wanted to exercise her Fifth Amendment rights not to testify, she indicated once again that she had not been truthful when she had given her taped statement to the police, and that she just did "what [Det. Nolan] wanted me to do." (Id. at 89).

Finally, the harmless error evaluation applicable to a Confrontation Clause claim is that which is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), which requires that in order to grant habeas relief a federal habeas court must find that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637, quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). See also Fry v. Pliler, 551 U.S. 112 (2007). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quotation marks omitted); Bond v. Beard, 539 F.3d 256, 276 (3d Cir. 2008). This Court is not in grave doubt that the alleged violation complained of here had a "substantial and injurious effect or influence" on the jury's verdicts, and therefore any error was harmless.

Based upon all of the foregoing, Claim I is denied.

### (b)     Sandmeyer's failure to effectively challenge the search warrant

In Claim II, Arrington contends that Sandmeyer was ineffective for failing to challenge the issuance of the search warrant on the basis of Rosendary's unreliability. The Superior Court denied this claim because, contrary to Arrington's allegations, Sandmeyer *had argued that the evidence seized in the*

*search should be suppressed because the affidavit of probable cause relied upon information supplied by an unreliable informant.* (See 4/26/05 Hr'g Tr. at 27-29. See also CP Dkt. No. 23, <u>Commonwealth v. Arrington</u>, No. 27 & 28 of 2005, slip op. at 2-7 (CP Erie Nov. 7, 2005)). In disposing of that issue on direct appeal, the Superior Court held:

> In the present case, Ms. Rosendary told police that Appellant had sold her the drugs that she possessed earlier that day while she and he were located at his home.[1] *Her reliability was verified by the conduct of a controlled buy with Appellant[2] as well as by the existing surveillance independently being conducted of Appellant.* In addition, the warrant indicated that Appellant had a prior criminal record for dealing drugs and that police had been informed by another confidential informant that Appellant was selling cocaine from his home. We therefore reject Appellant's contention that probable cause was not present in the search warrant.
>
> [1] Since the warrant's sufficiency is based upon police knowledge at the time of issuance, we view as irrelevant Appellant's assertion that he was in Ohio when Ms. Rosendary said that she was sold the drugs. This assertion is based upon testimony given by Appellant at the suppression hearing, and *the suppression court specifically found that Appellant was not credible when he testified that he was in Ohio when Ms. Rosendary said that she purchased the drugs found in her possession on November 3, 2004.*
>
> [2] In his third issue, Appellant notes that a full body search was not conducted of Ms. Rosendary and then suggests that this fact undermines the reliability of the controlled buy since she could have secreted the drugs in a body cavity rather than obtain them from Appellant. *However, police continually surveilled Ms. Rosendary during the controlled buy and she had no opportunity to obtain drugs from inside a body cavity.* Thus, we reject this position.

(CP Dkt. No. 25, <u>Arrington</u>, 1603 WDA 2005, slip op. at 5-6 (emphasis added)).

Therefore, because Sandmeyer did argue that the evidence seized from Arrington's home should be suppressed because Rosendary was unreliable, and because the Superior Court on direct appeal expressly rejected that contention, the Superior Court in the PCRA proceeding denied Arrington's claim that Sandmeyer was ineffective for failing to raise the issue. (CP Dkt. No. 49, <u>Arrington</u>, 1226 WDA 2008, slip op. at 9-10). Its decision was neither an unreasonable application of <u>Strickland</u> nor an unreasonable determination of the facts.

Arrington also contends that Sandmeyer was ineffective because he did not move to have the Commonwealth identify and produce the confidential informant referred to in the search warrant as CI #96-04. He has advanced no evidence to show that there is a reasonable probability that, if CI #96-04's identity had been produced, the outcome of his suppression hearing or trial would have been different. There nothing in the record that demonstrates that that informant was unreliable. Det. Dacus explained in the affidavit of probable cause: "This CI is believed to be reliable as he/she has cooperated with law enforcement resulting in 12 arrest[s] and convictions for felony drugs within the City of Erie. This CI has also provided information on at least fifty other individuals within the City of Erie involved in the drug trade and this information has been corroborated by other reliable informants, surveillance and information contained within the Erie Police database." (ECF No. 7, Ex. 1). The Pennsylvania Supreme Court has held that: "[I]nformation received from confidential informants may properly form the basis of a probable cause determination… An informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past[.]" Commonwealth v. Luv, 735 A.2d 87, 90 (Pa. 1999) (internal citations omitted).

Based upon all of the foregoing, Claim II is denied.

### (c) Sandmeyer's failure to call Rashad McLaurin

Arrington contends that Sandmeyer was ineffective for failing to call Rashad McLaurin as an alibi witness at the suppression hearing and/or trial. In rejecting this claim, the Superior Court held:

> According to Appellant, "Mr. McLaurin could have established that [Appellant] was in Cleveland at the time he was alleged to have sold crack cocaine to [Ms. Rosendary], earlier in the day. Having shown that [Ms. Rosendary's] initial statements were incorrect, this casts doubt upon the 'sting' operation, and the later issuance of the search warrant itself." Appellant's Brief at 12. We cannot agree.

In order to establish that trial counsel was ineffective for failing to call a witness, a PCRA petitioner must establish that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced the appellant.

Commonwealth v. Hall, 867 A.2d 619, 629 (Pa.Super. 2005) (citation omitted). Even assuming he can meet the first four requirements enumerated above, Appellant is not entitled to relief because he cannot establish that the absence of Mr. McLaurin's testimony prejudiced him. As noted above, the warrant issued for the search of Appellant's residence was based upon more information than Ms. Rosendary's initial statements to the police regarding her obtaining drugs from Appellant. Moreover, as this Court stated in Appellant's direct appeal:

> Since a warrant's sufficiency is based upon police knowledge at the time of issuance, we view as irrelevant Appellant's assertion that he was in Ohio when Ms. Rosendary said that she was sold the drugs. This assertion is based upon testimony given by Appellant at the suppression hearing, and the suppression court specifically found that Appellant was not credible when he testified that he was in Ohio when Ms. Rosendary said that she purchased the drugs found in her possession on November 3, 2004.

[CP Dkt. No. 25, Arrington, 1603 WDA 2005, slip op. at 5 n.1]. Thus, because the search warrant was also based on evidence of the controlled buy, as well as independent police surveillance and information received from another known informant, the presentation of a witness to further contradict Ms. Rosendary's claim that she initially bought drugs from Appellant would not affect the probable cause shown to support the warrant. Thus, because counsel cannot be deemed ineffective for failing to purse a meritless claim, [this] claim of ineffectiveness is without merit.

(CP Dkt. No. 49, Arrington, 1226 WDA 2008, slip op. at 10-11).

There is no basis for this Court to disturb the state court's adjudication under AEDPA's deferential standard of review. 28 U.S.C. § 2254(d). As noted above, to prevail on a claim that the state court has adjudicated on the merits, Arrington must demonstrate that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87. He has not met that high threshold.

18

Based upon all of the foregoing, Claim III is denied.

### (d)    Sandmeyer's performance as appellate counsel

In Claim IV, Arrington contends that Sandmeyer provided him with ineffective assistance when he represented him on the direct appeal because he failed to properly litigate the issues that Arrington now raises in Claims I and II.  This claim is denied because it does not appear that Arrington raised it before the Superior Court.  (See CP Dkt. No. 49, Arrington, 1226 WDA 2008, slip op. at 5-6) (summarizing the claims Arrington raised in his PCRA appeal)).  See also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A) and noting that "[i]t is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts."); O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Accordingly, since he did not exhaust Claim IV, it is procedurally defaulted.  See, e.g., Lines v. Larkins, 208 F.3d 153, 160-66 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

If Arrington had not procedurally defaulted Claim IV, it would be denied on the merits.  In order to prevail on this claim, Arrington must prove that there is a reasonable probability that, but for Sandmeyer's ineffectiveness in failing to properly litigate the claims at issue, the Superior Court would have reversed his judgment of sentence.  United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000). He cannot make that showing since the issues in Claims I and II that he argues that Sandmeyer failed to properly litigate have no merit.

Based upon all of the foregoing, Claim IV is denied.

**C.**     **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Arrington's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied. An appropriate Order follows.

<br>

Dated: January 9, 2012
           /s/ Susan Paradise Baxter
           SUSAN PARADISE BAXTER
           United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**ANTWON ARRINGTON,** )
    **Petitioner,** )     **Civil Action No. 09-136 Erie**
     )
    **v.** ) 
     )     **Magistrate Judge Susan Paradise Baxter**
**MICHAEL C. BARONE, et al.,** )
    **Respondents.** )

## ORDER

AND NOW, this 9th day of January, 2012;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED. The Clerk of Courts is directed to close this case.

                /s/ Susan Paradise Baxter
                SUSAN PARADISE BAXTER
                United States Magistrate Judge